**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02243-RBJ-MEH

6 WEST APARTMENTS, LLC,

Plaintiff,

v.

THE OHIO CASUALTY INSURANCE COMPANY,

Defendant.

---

**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DAMIAN ARGUELLO'S REBUTTAL TO JS HELD REPORT**

---

Defendant, The Ohio Casualty Insurance Company ("Ohio" or "Defendant"), by and through its undersigned counsel, Lewis Roca Rothgerber Christie LLP, pursuant to Fed. R. Evid. 702(a) and Fed. R. Evid. 403, hereby moves the Court for an order excluding the rebuttal testimony of Plaintiff's expert Damian Arguello. In support thereof, Defendant states as follows:

## **CERTIFICATION**

Pursuant to D.C.COLO.LCivR 7.1(A), undersigned counsel conferred with counsel for Plaintiff via telephone and email. Plaintiff does oppose Defendant's motion with respect to Mr. Arguello's opinions regarding Ohio Casualty's claims handling.

## **INTRODUCTION**

This case involves two Builder's Risk claims 6 West made for water loss to the interior drywall of prefabricated, modular units 6 West used to construct its apartment complex in Eagle, Colorado. The initial water loss claims were made in August and November 2018. Nearly nine months after making its initial claims, 6 West made two "amended" claims for additional

damages it claimed occurred in the months after the initial claims were inspected, evaluated and paid. The "amended" claims were ten times the amount of the initial claims. The "amended" claims were reported after 6 West had repaired all of the alleged damage to the units, severely prejudicing Ohio's ability to confirm, evaluate and pay the claims. Nevertheless, Ohio paid 6 West nearly $300,000 in Policy benefits, which are likely not owed and not covered. 6 West however, claims approximately $500,000 in additional unsubstantiated benefits. 6 West also baselessly asserts claims for violations of C.R.S. § 10-3-1115 and common law bad faith breach of contract ("Bad Faith Claims"), which are wholly unsupported by the evidence.

The only evidence 6 West has presented in support of Bad Faith Claims is the report of Damian Arguello, a Denver local plaintiffs' insurance attorney. Mr. Arguello has no experience adjusting Builders Risk claims and his report constitutes nothing more than conclusory legal opinions that directly contradict the evidence in this case and are entirely unhelpful to the trier of fact. Further, Mr. Arguello has issued a purported rebuttal report to Ohio's retained construction expert, which Mr. Arguello admits has no relation to the insurance industry standards discusses in his affirmative report. Nevertheless, Mr. Arguello, despite having absolutely no experience in the construction industry, proceeds to attempt to rebut Ohio's construction expert, which is entirely improper. Because Mr. Arguello has no experience or expertise in the construction industry, his rebuttal opinions should be excluded.

## STANDARD OF REVIEW

Fed. R. Evid. 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand

the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. "Fed.R.Evid. 702 imposes upon the trial judge an important "gate-keeping" function with regard to the admissibility of expert opinions." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Whether an expert's opinion is admissible requires a two-step analysis: (1) whether an expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion; and (2) whether the expert's opinions are reliable. *Haynes v. Transamerica Co.*, No. 16-cv-02934-KLM, 2018 WL 4360444, *2 (D. Colo. Sept. 13, 2018).

To be reliable, expert testimony must be "based on actual knowledge, and not 'subjective belief or supported speculation.'" *Mitchell v. Gencorp., Inc.* 165 F.3d 778, 780 (10th Cir. 2000). When an expert is "relying solely or primarily on experience," he must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Fredette,* 315 F.3d 1235, 1240 (10th Cir. 2003) (citing Fed.R.Evid. 702 advisory committee note).

"When [an] expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable it cannot support a jury's verdict" and will be excluded. *Pioneer Centres Holding Co.v. Alerus Fin.*, 858 F.3d 1325, 1342 (10th Cir. 2017). "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W.R.R. Co.,* 215 F. 3d 1083, 1088 (10th Cir. 2000).

Legal conclusions are prohibited. "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (citing Rule 704 advisory committee note). An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. *Id.* at 809. Experts are not permitted to simply instruct the jury how to rule, and "[p]ermissible testimony provides the jury with tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *U.S. v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015).

## ARGUMENT

### I. Mr. Arguello's April 26, 2021 Rebuttal Report Should be Excluded.

6 West alleges that Ohio acted in bad faith and in violation of C.R.S. § 10-3-1115 and -1116 by unreasonably delaying and denying it benefits owed by the policy. To prove its claims, 6 West offers the testimony of Damian Arguello, a plaintiff's insurance bad faith attorney. Prior to beginning his legal career, Mr. Arguello had limited experience in the insurance industry. What limited experience he does have relates almost exclusively to the handling of workman's compensation claims and errors and omissions claims. He has no experience in the construction industry or in evaluating construction cost claims. *See* Excerpts Arguello Report, Arguello Vitae and Arguello Depo, attached as **Exhibit A**.

In his rebuttal report, Mr. Arguello fails to explain how this limited experience provides a sufficient basis for his opinions regarding the handling of builder's risk claims involving the

evaluation of construction cost. *U.S. v. Fredette,* 315 F.3d 1235, 1240. *See* Arguello Rebuttal Report, attached as **Exhibit B**.

On March 11, 2021, Ohio's retained construction claims expert, Katie Twomey with JS Held issued her expert report ("Held Report"). Ms. Twomey was not involved with JS Held's evaluation of 6 West's "amended" claims prior to the commencement of litigation. Ms. Twomey has over 30 years of experience in managing and overseeing hundreds of construction projects for her former employer, Clark Construction. Group. *See* Katie Twomey Resume and Deposition Excerpts from K Twomey Depo., attached as **Exhibit C**. Ms. Twomey was retained to provide opinions regarding "the validity and value" of 6 West's claims. *See* Held Report attached as **Exhibit D**. Ms. Twomey offers no opinions regarding Ohio's handling of the insurance claim at issue in this case. *Id.*

On April 26, 2021, 6 West's purported insurance expert, Mr. Arguello, issued a rebuttal to the Held Report. In the second sentence of his rebuttal Mr. Arguello provides, "For the most part, the Held report isn't relevant to the insurance industry standards discussed in my initial report." *See* **Exhibit B** at p. 1. Although Mr. Arguello openly admits there is no basis for his rebuttal, he nonetheless provides an eight-page report containing multiple baseless and inappropriate opinions.

Mr. Arguello has no experience in the construction industry. *See* **Exhibit A** at p. 58 l. 1-16. He has never worked as a contractor. *Id.* He has no experience in either compiling or evaluating construction claims. *Id.* Mr. Arguello is therefore not qualified to testify regarding the Held Report. "To be reliable, expert testimony must be "based on actual knowledge, and not mere 'subjective belief or supported speculation." *Mitchell*, 165 F.3d at 780.

**A. The Opinions expressed in the "*Held's Post-Filing Claim Investigation Perpetuates OCIS's Unreasonable Conduct*" Section of the Rebuttal Report have no basis in fact and are speculative.**

In the first section of his report, Mr. Arguello opines that Ohio's and JS Held's handling 6 West's "amended" claims evidences Ohio's unreasonable conduct. *See* **Exhibit B** at p. 1-3. Mr. Arguello's opinions in this regard should be excluded because they are improper legal conclusions and unreliable.

First, Mr. Arguello's opinion that Ohio's conduct was unreasonable is inappropriate and must be excluded because it is an improper legal conclusion. "While testimony of experts concerning the ordinary practices or trade customs in the industry are admissible to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice, opinions as to the legal standards which the expert contends control the case are not." *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988).

Second, there is no factual basis for Mr. Arguello's opinions that Ohio unreasonably delayed the handling of the "amended" claims by failing to thoroughly investigate the July and October 2018 water losses that would have prevented the possibility of a later amended claim for additional damages. *See* **Exhibit B** at p. 2. It is undisputed the "amended" claims are for the costs to repair additional damages which occurred **after** the losses were reported, inspected and adjusted. *See* [Doc. 35] - 6 West's Response to Motion for Summary Judgment at p. 3 ("Water infiltration and resulting damages occurred over months, due to freezing conditions,..."). *See also* C. Evans Depo. excerpts at p. 116 l. 16 – p. 120 l. 8, attached as **Exhibit E**. Because the additional damages "occurred for months **after** the initial losses were reported," Mr. Arguello's opinions that Ohio unreasonably delayed the handling of the claims by failing to evaluate the

entire loss *before the majority of it had even occurred* is factually impossible and wrong. "Expert testimony must be relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms, Inc.,* 509 U.S. 579, 588-589 (1993). "To be reliable, expert testimony must be "based on actual knowledge, and not mere 'subjective belief or supported speculation.'" *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 780 (10th Cir. 2000). "When expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable it cannot support a jury's verdict and will be excluded." *Pioneer Centres Holding Company ESOP*., 858 F.3d 1325, 1342 (10th Cir. 2017). Mr. Arguello's opinions are contradicted by the undisputed record in this matter, will not benefit the jury, and instead will confuse the jury and prejudice Ohio. As such, these opinions should be excluded.

Further, Mr. Arguello's unsubstantiated and speculative opinions that Ohio retroactively tried to renege on its promises to pay and it should "chalk it up to error" should be stricken as baseless and speculative opinions. *See* **Exhibit B** at p. 2. "It is axiomatic that an expert, no matter how good his credentials is not permitted to speculate." *Goebel v. Denver & Rio Grand W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir. 2000).

### B. Mr. Arguello is not qualified to express the opinions stated in the "*Held's Opinions Rely on an Illusory 'Standard'*" section of his Rebuttal Report.

In the second section of his rebuttal report, Mr. Arguello opines that, Ms. Twomey's opinion that 6 West's and its contractor did not meet construction industry standards in documenting the additional damages is unsubstantiated. *See* **Exhibit B** at p. 4. Mr. Arguello claims that Ms. Twomey is holding 6 West's contractors to an "illusory standard." *See* **Exhibit B**

at p. 3-4. Mr. Arguello has no qualifications to rebut this opinion. He is not a contractor and has never worked in the construction industry. *See* **Exhibit A** at p. 58 l. 1-16. On the other hand, Ms. Twomey has thirty-two years of experience in the construction industry and has overseen the submission of builder's risk claims by her former employer, Clark Construction Group. *See* **Exhibit C**. Because Mr. Arguello has no experience in the construction industry, there is no basis for his rebuttal opinion, and it must be excluded. A proffered expert is not qualified under Fed. R. Evid. 702 when that expert has no training, education, or experience in the subject-matter of the proffered opinion, and the expert admits to not being an expert in the same subject-matter. *Ralston*, 275 F.3d at 969; *Goodwin*, 829 F. Supp. 2d at 1049–50.

### C. Mr. Arguello's speculative opinions regarding Ms. Twomey's "intent" when issuing her report is baseless and will not benefit the jury.

In the third section of Mr. Arguello's rebuttal report, he opines that because Ms. Twomey discusses certain discrepancies with 6 West's "amended" claims that she "implies" 6 West and ECCG are dishonest. *See* **Exhibit B** at p. 5-6. These opinions are not only speculative regarding Ms. Twomey's state of mind, but should also be stricken because the opinion interferes with the function of a jury, which is to determine the credibility of the witnesses. "An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." *Specht v. Jensen.,* 853 F.2d 805, 808 (10th Cir. 1988).

Further, Mr. Arguello also bases the opinions expressed in this section on his misguided belief that 6 West's "amended" claims could have been resolved when the losses were first evaluated. As discussed above, this contention is flatly wrong. *See* Section I. A., *supra*. Mr.

Arguello's opinions expressed in this section should be excluded because they are unreliable, speculative, and interfere with the function of the jury.

**D. Mr. Arguello's opinions that the Held Report was in error because it failed to cite any source for 6 West's obligation to mitigate its damages is baseless and should be excluded.**

In the fourth section of his rebuttal report, Mr. Arguello criticizes Ms. Twomey's opinion that much of the cost 6 West incurred to fix the interior drywall was related to its failure to mitigate and not related the initial water losses claimed. *See* **Exhibit B** at p. 6. Mr. Arguello opines that there is no verifiable source for 6 West's obligation to mitigate its loss. *Id.* Mr. Arguello's assertion is wrong and must be excluded. The subject Policy provides:

**<u>WHAT MUST BE DONE IN CASE OF LOSS</u>**

> **2. You Must Protect Property** –"You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.
>
> **a. Payment of Reasonable Costs.** –"We" do pay the reasonable costs incurred by "you " for necessary repairs or emergency measures performed solely to protect property from further damage by a peril insured against if the peril insured against has already cause da closs to covered property. "You" must keep an accurate record of such costs."

*See* [Doc. 35.1] – OCI Policy at POL 000080-81.

Contrary to Mr. Arguello's assertion, the plain language of the Policy obligates 6 West to protect the "property at and after an insured loss to avoid further loss." *Id.* Ms. Twomey's opinion that the majority of the costs incurred and claimed by 6 West were the result of its failure to mitigate are appropriate and Mr. Arguello's speculative and baseless assertions to the contrary will not assist the jury and therefore should be excluded.

**E. Mr. Arguello's opinions that the "*Held's Reports Collectively Demonstrate Ohio's Failures*" should be excluded because they are not based in fact, speculative, and will not aid the jury.**

In the fifth section of his rebuttal report, Mr. Arguello opines that it is implied in JS Held's original claims evaluation report that Ohio should have engaged JS Held when 6 West originally notified Ohio of its loss. *See* **Exhibit B** at p. 6-7. Mr. Arguello has not spoken to any of the JS Held consultants who issued the JS Held Report. *See* **Exhibit A** at p. 58 l. 1-16. Mr. Arguello therefore has no factual basis for his opinion that JS Held was implying anything by the remarks in its original report. Absent a basis in fact, this opinion is speculative and must be excluded. Expert opinions speculating on what is motivating the behavior of others is speculative and should be excluded. *Luciano v. E. Cent. Bd. of Coop. Educ. Servs.,* 885 F. Supp. 2d 1063, 1072 (D. Colo. 2012).

**F. Mr. Arguello's opinions that "*Held Caused Some of OCIC's Claims-Handling and Payment Delays*" are not supported by any analysis regarding how Ohio failed to meet objective industry standards and thus should be excluded as speculative and unreliable as they will not assist the jury.**

In the sixth section of his rebuttal report, Mr. Arguello, without citing any insurance standards, or providing any discussion on how Ohio's conduct failed to meet such standards, opines that JS Held's actions delayed the handling and payment of 6 West's "amended" claims. *See* **Exhibit B** at p. 7. As discussed above, Mr. Arguello has no construction experience is unqualified to opine on JS Held's evaluation of the "amended" claims. Further, Mr. Arguello fails to reference any objective insurance industry standard applicable to a construction claims consultant's evaluation of a builder's risk claim, and likewise fails to provide any analysis applying the facts of JS Held's evaluation. Absent such analysis, Mr. Arguello's baseless

assertion offers no assistance to the jury in determining whether Ohio met these standards in its handling of 6 West's "amended" claims, and should therefore be excluded.

### G. Mr. Arguello's opinion that "*Held's Dual Role as Claims Investigator and Expert Witness is Contrary to Industry Standards*" is a baseless and unsupported opinion that will not benefit the jury, and should be excluded.

In the final section of his rebuttal report, Mr. Arguello opines that Ohio should have retained a different expert in this litigation. *See* **Exhibit B** at p. 8. In stating his opinion, Mr. Arguello confirms that he is applying an insurance claim litigation standard, rather than an objective insurance industry standard to is analysis. *Id.* ("This standard in litigating insurance claims, particularly complex builders risk claims...") Mr. Arguello provides no objective insurance industry standard for his opinion, nor does it have any relevance to this case. Absent an objective industry standard to support his opinion, his opinion is speculative and must be excluded as unreliable. Further, this opinion is not relevant to the issue of where Ohio unreasonable delayed the handling of 6 West's "amended" claims.

The Tenth Circuit makes clear: "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions that would merely tell the jury what result to reach…." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). Experts are not permitted to simply instruct the jury how to rule, and "[p]ermissible testimony provides the jury with tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *U.S. v. Richter*, 796 F.3d 1173, 1198 (10th Cir. 2015).

**CONCLUSION**

WHEREFORE, Defendant Ohio Casualty Insurance Company respectfully requests that the Court exclude from admission at trial all opinions stated in Mr. Arguello's April 26, 2021 rebuttal report.

Respectfully submitted this 10th day of November, 2021.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*s/ Jon M. Ludwig*
Brian J. Spano, Esq.
Holly C. White, Esq.
Jon M. Ludwig, Esq.
1601 19th Street., Suite 1000
Denver, Colorado 80202
Phone: (303)623-9000
E-mail: hwhite@lewisroca.com
jludwig@lewisroca.com

*Attorneys for Defendant The Ohio Casualty Insurance Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2021, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DAMIAN ARGUELLO'S REBUTTAL TO JS HELD REPORT** was electronically filed using the CM/ECF system, which will electronically provide service upon counsel for 6 West.

Jose A. Ramirez, Esq.
Shawn A. Eady, Esq.
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Phone: (303) 295-8000
Email: jramirez@hollandhart.com
saeady@hollandhart.com

*Attorneys for Plaintiff*

*s/ Jon M. Ludwig*
Jon M. Ludwig, Esq.



115906994.8